HIGGINBOTHAM, J.,
concurring.
hi respectfully concur and write separately to stress that the HMO NIC issued by OGB does not clearly define the tasks to be performed under the contract and the criteria to be used in evaluating the proposals, as required by statute.' See La. R.S. 39:1503(B); LAC 34:V.145(A)(6).[1] *1104 The subject HMO NIC sought solicitations for one of the largest contracts ever awarded by this state. If OGB had written the terms of this NIC in a clearer manner, 12this litigation could have been avoided. I point out three examples that are representative of the lack of clarity in the HMO NIC.
First Example—
It was not until after the aggrieved proposers filed protests that Tommy Teague, former Chief Executive Officer of OGB, succinctly explained in an affidavit that the HMO plan was designed primarily for members who would seek health care in Louisiana through a statewide network of health care providers, but the plan also took into account the fact that some members would need health care out-of-state; therefore, it required a “statewide” network of providers. Teague explained that OGB never intended to preclude access to out-of-state providers in the HMO plan. Teague’s affidavit also explained that the EPO plan was designed for members who would need more access to health care out-of-state; therefore, it required a nationwide network of health care providers.
In contrast, the actual NICs do not make this distinction or contain this simple explanation. There is no mention or discussion in the HMO NIC of a “statewide” or “nationwide” network of providers. The NIC states that contractors must be capable of providing all services and benefits set forth in the Plan of Benefits (Exhibit 1). Exhibit 1 is not a document outlining “services and benefits,” rather Exhibit 1 instructs proposers to go to the OGB Hbihe Page, under “Welcome to Group Benéfíts,” click “A Visitor,” then click “Health Plans,” then click the appropriate plan link. Exhibit 1 does not attach a print out from the website. The NIC does attach, as Exhibit 2, the “OGB HMO Summary of Benefits Chart,” but there is no | ^mention or explanation in the NIC as to the purpose of Exhibit 2 or the contents of Exhibit 2.
Second Example—
In the Proposers’ “Requirements-Questions” section of the HMO NIC, one of the questions states, “Do you agree to reprice the attached claims utilizing the discounts contained in your current HMO contracts with the identified providers?” [Emphasis Added.][2] After the aggrieved proposers filed protests, OGB then explained that the repricing exercise was to be done using the network that proposers would use to perform the contract.
Third Example—
The HMO NIC explains that proposals will be scored on cost of coverage and qualitative/network assessment, with each component worth up to 500 points. Fifteen scoring points are listed under the “Qualitative/Network Assessment,” and there is no indication as to whether one point is entitled to greater weight than the others. One of the listed scoring points for the “Qualitative/Network Assessment” is “[p]lan [m]ember disruption and plan member continuity of care.” The evaluations of the proposals demonstrate that this “disruption” factor accounted for 200 of the available 500 points for this scoring component.
OGB has now acknowledged that in developing the HMO NIC, it was aware that *1105 the disruption of care was a “significant issue” for plan participants who may diligently seek an in-network hospital, yet encounter significant out-of-pocket expenses because the hospital-based physician |4was not in-network. Accordingly, the HMO NIC could have more clearly defined the weight which would be applied to this “significant” evaluation criterion. See LAC 34:V.145(A)(6)(f), supra.
Nevertheless, I do agree with the majority opinion that the agency did not abuse its discretion in finding that all three proposals received in response to the HMO NIC were responsive to the HMO NIC. Although the HMO NIC could have been written more clearly to avoid this protracted litigation, there is no language in the HMO NIC expressly prohibiting the consideration of enhanced benefits, including a nationwide network.
Furthermore, as noted by the majority opinion, the process utilized by OGB for this procurement of services was a competitive negotiation and not a competitive bid process. Cf. LSA-R.S. 39:1484(A)(2) and (A)(3). Under this specific statutory scheme, OGB has greater discretion to negotiate contracts that are in the best interest of the state. Accordingly, there has been no showing that the contract which resulted from OGB’s negotiations was not in the best interest of the state.
For this reason, I concur with the majority opinion.

. Louisiana Revised Statutes 39:1503 governing request for proposals under the "Service Procurement Code” states:
B. The Request for Proposals shall indicate the relative importance of price and other evaluation factors, shall clearly define the tasks to be performed under the contract, the criteria to be used in evaluating the proposals and the time frames within which the work must be completed. [Emphasis added.]
Louisiana Administrative Code Title 34, Part V, Subchapter B, Section 145(A)(6) provides, in pertinent part:
In addition to the requirements of R.S. 39:1503 and these regulations, a request for proposal shall:
*1104 a. .specifically define the task and desired results of project;
f. inform the potential contractors of the criteria and the selection methodology and the weight which will be applied to each significant evaluation criteria to be used in evaluating the proposals’ responsiveness to the RFP[.] [Emphasis added.]

. The quoted question was No. 18 on page 19 in Section V of the HMO NIC.